The People of the State of New York v. Daniel Kerrigan.— Judgment reversed, and new trial granted.—

BROWN, P. J.: The appellant was convicted of the crime of manslaughter in the second degree, in having killed one William Horton. After a careful examination of the case, we are of the opinion that the evidence does not establish the appellant's guilt, and is of too weak a character to support the verdict. It appears that about four o'clock on the morning of November 7, 1893, the appellant and deceased were in Gaffney's saloon on Flushing street in Long Island City in company with William Gemp, Patrick McDermott, Daniel Stine and William Gaffney. Horton was drunk and Kerrigan had been drinking. They quarreled, but no blows were struck, and at the direction of the bartender, Gaffney, they went out of the saloon. McDermott was told to go outside and separate them. He testified that he went out and found them struggling together; that their arms were around each other as if they were wrestling, but he saw no blows struck, and separated them, and all then returned to the saloon. When inside, Horton was found to have a cut about an inch and a half long over his right eye, and he said, referring to Kerrigan, that "he must have used a knife on me." The blood was washed from his face, and on his complaining that he was cut in another part of his body, he was examined, but no wound was found. There was no proof that Kerrigan had a knife about him at any time during the night. Soon after all parties left, except Horton and Gaffney, and later Horton left the saloon alone. He was then drunk, but able to walk. No one saw him alive after that, and no account is given in the testimony

of his whereabouts between his leaving the saloon and his death. Neither is it shown where or how he died, or who found his body, or under what circumstances it was found. Dr. John Clayland was sworn as a witness for the prosecution, and testified that on November ninth, between four and five o'clock in the afternoon, he made an autopsy upon Horton's body, and that, in his opinion, he had then been dead from twelve to twenty-four hours. He found abrasion on the limbs; the eyes were black; there was a wound over the right eye, discoloration extending down to the cheeks; bruises on the side of the head. He stated the cause of death to have been inflammation of the meninges of the brain, and gave it, as his opinion, that the cause of that inflammation was the blow which inflicted the wound over the eye. The deceased was shown to have been a drunkard for a long time. He had been in the hospital in October prior to his death, suffering severely from alcoholism, and his lungs, heart and kidneys were found in the autopsy to be in a very advanced state of disease. The physicians called on the trial differed as to the cause of Horton's death. All agreed that the inflammation, which was the immediate cause of death, might have resulted from other causes than the blow over the eye. Dr. Clayland thought the blow the proximate cause of death, while the other physicians appeared to be of the opinion that it was just as probable that death was the result of alcoholism. Dr. Burnett, who was called by the prosecution, testified that he could not say whether the primary cause of death was the blow or other cause; that the blow might have caused the inflammation, but he was unwilling to swear that it did. The primary cause of Horton's death was plainly pure speculation. It was, in the first place, an inference solely that Kerrigan struck him over the eye. No one saw the blow struck, and Horton did not directly assert that Kerrigan had struck him. His remark that Kerrigan must have used a knife on him was rather an inference drawn from the wound and the presence of the blood on his face. Such a statement from a drunken man has, we think, very little probative force. Beyond the slight loss of blood, Horton appeared not to have suffered any ill effects from the blow, however received, and when he left the saloon was in about as good physical condition as he was when he entered it. Giving to all this evidence the full effect claimed for it, and which the jury appear to have given it, it does not permit the conclusion beyond a reasonable doubt that Horton died from the effects of Kerrigan's blow. The absence of any evidence as to the subsequent movements of Horton throws great doubt on the cause of his death. Kerrigan was sworn as a witness in his own behalf and denied striking the blow. His version of the matter was, that when Horton came toward him he fell and cut himself; that he lifted him to his feet, and was struggling with him when McDermott separated them. He denied having a knife or inflicting the wound, and his testimony appears to be as worthy of credit as that of any of the other witnesses who were in the saloon. We think the evidence is of too weak a character to sustain the verdict, and the judgment should be reversed and a new trial granted. Pratt and Dykman, JJ., concurred.

In the Matter of the Estate of Harriet M. Foster, Deceased.— Decree of the surrogate affirmed, with costs.—